Oyez, Oyez, Oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you, please be seated. All right, we'll begin an argument in the United States v. Artis and Ms. Leifson, I'd be happy to hear from you. Thank you, Your Honor. Good morning, may it please the Court. Jenny Leifson for Ricky Artis. Your Honors, Mr. Artis seeks resentencing before a different district court judge. Now we have raised a number of issues in this appeal, but with our limited time today, I intend to focus on the Court's imposition of a warrantless search condition that it did not impose at the first sentencing. This search condition, which is designed for sex offenders, is not only procedurally and substantively unreasonable, it also raises a presumption of vindictiveness, because it is considerably more onerous than the one that was raised. That's where you get the idea that you ought to have a different judge? I'm sorry, Your Honor? You think you ought to have a different judge? Yes, sir, we are asking for that. That's where you get the idea. That's where, yes, Your Honor. Did you raise that? We did not, Your Honor. Well, that's plain error review, then. I'm happy to assume for purposes of our argument today that we are on plain error review, and that's all right, because I think we still win under that standard. Tough standard. It's a tough standard, but I think I can get there, Your Honor. So, again, as to the presumption of vindictiveness, the Supreme Court and this Court have made clear that it may play no role in the defendant's sentencing, and that any increase, any unexplained increase to the defendant's sentence raises the presumption. Why is there a presumption of vindictiveness? Just because you didn't get the result that you want, and you're saying that we sort of impute vindictiveness to the trial court? So, again, this Court and the Supreme Court have made clear that any unexplained increase in the sentence raises the presumption. So the question that this Court has to answer is, well, what do we mean by an increase? Because that's the very first step in the analysis, right? There has to be an increase. Before this district judge, you had a less harsh sentence on remand than before. Less imprisonment, shorter supervised release? So I'd like to make clear that the term of supervised release was the same, because on count one, which is the attempted robbery count, the Court initially imposed three years. That's the statutory max. The term of imprisonment for count two, I'm sorry, the term of supervised release on count two, which was the 924C count that went away, that was the five years. The Court could not impose more than three years of supervised release. We disagree with the search condition. That's, you know, fair enough and everything. But that's really quite a step that you're asking us to take, which is to impute bad faith and vindictiveness to someone who, over the course of many years of experience that this Court has had with him, I don't see any evidence of vindictiveness at all. I think he's a thorough, say, I think he is a thorough, conscientious judge, and I don't like the idea that he's being accused of something that has, over the years, he's shown no indication of. So, Your Honor, I appreciate that. Thank you, Judge Wilkinson. However, I think the question at the heart of this case is, how do we determine whether there has been an increase in the sentence for purposes of presumption? And our approach to that is very simple and straightforward. It is easy for this Court to apply. It is easy for the District Court to abide by. And that is, at a resentencing, the District Court simply looks at the first sentence it imposed. It went from 216 months to 204 months. Correct, Your Honor. That's 12 months left. That's correct, Your Honor. It went from five years to three years on the... No, it just, it stayed three years. That was the statutory maximum that the Court could impose. It's on the supervised release. On the supervised release, right. But at the same time, the Court imposed a much broader, much more onerous condition of supervised release. And we think that when a District Court, at resentencing, increases any component of the sentence, that should raise the presumption. What specifically made it an increase? What made it harsher? Oh, so many things, Your Honor. So, you know, the first, and the original search condition, which is at JA 84, simply says the defendant shall consent to a warrantless search by a United States Probation Officer or, at the request of the Probation Officer, any other law enforcement officer of the defendant's person and premises, including any vehicle. The new search condition, which is at JA 119, takes away all the time constrictions, so you have to submit to the search at any time, by any law enforcement or probation officer. So there's no longer the Probation Officer's request, right. Law enforcement can go in and search. It's not only, it's not just person and premises now. It's any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media. That alone, just getting into the computer, the digital devices, that is a hugely... But the question is whether the search condition was reasonably related to the nature of the offense. That's correct, Judge Wilkinson. And that's sort of getting into my second argument about why it was not related to the offense. But I just wanted to, right before we get there, I just wanted to point out... He shot a guy twice, tried to kill him, and he's gun jammed. That's the only reason he didn't commit murder. Got off kind of easy. And yet, I don't think that is a reason to search his phone or computer, Your Honor. But I just wanted to point out a few problems with the government's approach to this vindictiveness. The approach that the government would have you apply, which is what they call a holistic balancing test. And I agree 100% that sounds really good. That sounds very reasonable and judicious. But the moment you start trying to apply that test logically and consistently, you run into a number of problems. Some of which were identified by this court in United States v. Chang. One, it is extremely difficult to compare different components of the sentence, right? Chang says it's like comparing clementines to kumquats. What we're reviewing here is the sentencing proceeding that took place below. And the sentencing proceeding that took place below, it's well explained what the trial court did. And he, let's see if I can find the explanation here. And this is the heart of it. The district court says that your client wanted to kill the victim based on the information before it. He says your client brandished a lethal weapon and began firing almost immediately when he entered the hotel room. He shot McNeil multiple times at close range. Not because he's a good person and not because he thought better of it, but because the gun jammed. In fact, the artist thought he killed McNeil when he fled. And this man, as a result, is confined to a wheelchair for the rest of his life. And that's the heart of it. And we can fritter around the edges about this and that. But the question here is whether this sentence as a whole was an unreasonable act on the part of the district judge and some sort of abuse of the district court's sentencing discretion for what is an absolutely horrific crime. The only reason he did not commit a homicide was because of the gun jam. It is a terrible crime, Your Honor. I'm not here, certainly, to defend that crime. I'm simply saying that those facts do not establish any reason to search Mr. Artis' phone and computer for the next three years. That's really not reasonably related. And Judge Wilkinson, if you will remember, I think about two years ago, you and I had the exact same conversation about Roger Locklear. And that was the same explanation was given for the warrantless search condition for Roger Locklear. The exact same condition was imposed. And in that case, Your Honor, you agreed with me that that had to be reversed because there was not a proper explanation as to why that, especially the computer condition, why that search condition was reasonably related and appropriate for Mr. Locklear. And that was a drug dealing case, Your Honor. I think there's even less basis for that search condition to be imposed here. It was, Your Honor, and you reversed it on plain error. And it was based on United States v. Arbaugh, which is a published opinion by this court, which actually did have to do with a sex offender. And the court still said that in that case, in Arbaugh, that the explanation was insufficient for Mr. Arbaugh. Our case, obviously, Mr. Artis is not a sex offender. He has, there's nothing, this crime. Yes, Your Honor. I don't hold out any grief for sex offenders, but I would think that someone who is a would-be murderer is in an entirely different situation from the individual that you and I have maybe talked about sometime back. In other words, there's a more, we're talking about a more serious offense here, and the district court wants to make double sure that this individual is not up to, it's not just the gun, it's the combination of the drug dealing plus the fact that he tried to commit a murder in cold blood. So this is, by several quantum leaps up, this is a more serious, the combination of drugs and guns and attempting murder would invite a different kind of search condition than someone who is a sex offender, and I can see that being overbroad in the situation. These are different offenses. And if the court had actually tied anything about the offense into the reasoning for why that warrantless search condition was necessary, especially to search the computer and the phone, then I might be making a different argument, Your Honor. However, I will say that, again, in Locklear, the exact same explanation for this exact same search condition was deemed to be insufficient under plain error review based on United States v. Arbol. Was the explanation also insufficient at the original sentencing for the original search condition? At the, in this case, Your Honor? Yes. Yes, absolutely. And actually, the court didn't, just said warrantless search condition, which wasn't even the same search condition that was imposed in the judgment. So in the original appeal, in addition to the 924C count, we also made a Rogers Singletary error, which I think, you know, if the court had reached that, it also would have found that. So, no, it wasn't sufficient at the original sentencing either. But the judge did a little bit more this time, didn't he? He said. He referenced 3553A factors. He did. And this court said, again, in Locklear, that that was, just referencing the 3553A factors was insufficient. Including the need for adequate supervision? Correct. He said the exact same thing. And this court said that that's just, that could be said about any defendant, right? That sort of, that little recitation that he did. Well, if you do it in combination with other factors that are specific to the defendant, that might be adequate, correct? If that were here, but I don't believe it is. I don't think there's anything that he said that would require a search of his phone and computer. Again, that is a condition that's designed for sex offenders. Mr. Arden. The drug dealing here might well require coordination among other drug dealers, and they would be using a computer and phone to coordinate those offenses. And at any rate, the search condition was set forth in the PSR, wasn't it? It was, Your Honor, absolutely. And there was no objection to it? There was no objection to it, yes. This is troublesome because maybe the earlier case didn't, you know, was on plain error, but when you have something like the search condition and you say, oh, this is just terrible, and it exceeded what was done before and everything, when it's spelled out in the PSR and there's no objection to it, and we're dealing with a crime involving both drugs and murder, and the district court wants to make sure that this individual is not up to what landed him in prison in the first place. He's just being thorough and making sure that these crimes are not repeated, and this is a very dangerous individual. So two things, Your Honor, I just want to make clear. There's no evidence that Mr. Artis is a drug dealer, right? That was the victim, was the drug dealer. This is an attempted robbery, so Mr. Artis is not a drug dealer. Second, Your Honor, all of those things were true in Locklear. It was in the PSR. There was no objection. The exact same explanation was given. So I would ask, Your Honor, that you follow what you've already decided in the United States versus Locklear and vacate the warrantless search condition. Thank you. Thank you. Ms. Fritz, we'd be happy to hear from you. Good morning. May it please the Court, Christine Fritz on behalf of the United States, asking you to affirm the judgment of the district court. Like my colleague, I'd want to begin with the warrantless search condition, and I'll begin the same place she did with vindictiveness. And defendant's sentence is not actually harsher on remand than his original sentence. Moreover, there's no reasonable likelihood that the change in the warrantless search condition is the product of actual vindictiveness. And for that reason, a presumption of vindictiveness does not arise. Now, the first step is looking at whether the sentence is actually harsher. We have a sentence that is 12 months less imprisonment and two years shorter term of supervised release. And yes, we have a differently worded supervised release condition. And in some ways, that condition does cover a broader area, a broader range of places to be searched. But it also does include a requirement for reasonable suspicion that was not present in the original sentencing condition. And it is hard to look at a sentence holistically in some cases. But in Chang, the court was willing to look at the sentence holistically. And it acknowledged that there might be times when, for example, a supervised release term is increased and a term of imprisonment is decreased on remand. And it indicated that that doesn't necessarily give rise to a presumption of vindictiveness. But you look at the sentence as a whole. And in Chang... She's saying that this is inconsistent with something, a search situation that occurred three years ago, the search condition is inconsistent. What do you have to say about that? Well, interestingly, I was also before Your Honor in that particular case. Locklear is an unpublished decision. So it is not precedential. And I think it is very different from the situation we have here. So if we're going to look at... Tell me why you think it's so different. I've explained to you why I think it might be different. Well, I think, first of all, all of these explanation cases are fact-specific. And yes, the court at the end of Locklear did make reference to, for example, the nature and circumstances of the offense, the need for adequate supervision. But that shouldn't be considered in isolation. Because the district court judge here said a lot about this individual, about the nature and circumstances of the offense, and the need for adequate supervision throughout the entire sentencing hearing. Because of the offense? Well, it was both the offense and it was also the fact that this individual had three decades' worth of criminal history, during which the court, in discussing his criminal record, noted that he was repeatedly flouting the rules. He was not able to perform well in supervision. The court walked through his criminal history and pointed out no fewer than nine times when his probation was revoked, or probation or post-release supervision, was revoked for failing to comply with rules. And that was also replete through the PSR, all of these concerns. The court said, I mean, at 108, the court says, his record shows me that he has failed often when he is out and even under supervision. Earlier in the same hearing, at JA 100, the defense attorney was trying to say, look at his conduct while he's been incarcerated. He's changed. He's broken this pattern. And the court's response to that was that half a century on the earth and his time as an adult gives me little confidence. This is a court that was gravely concerned, not only with the dangerousness of this individual, as shown through his incredibly violent offense, but also through his pattern of being unable to follow the rules. And the court needed to equip the probation officer with the tools it needed to adequately supervise him. And I think that that is distinguishable from Locklear. Again, it's distinguishable from Locklear because that comment about the need to adequately supervise, it's a shorthand reference to much of what the court had already said. I don't think it's boilerplate. But I think it's a district court judge who thought, I don't need to repeat what I have already made very clear throughout the hearing. And that is that this is a dangerous individual who needs supervision and who needs a probation officer equipped to handle someone with three decades' worth of not following the rules. That is very different from what Locklear had presented. I wanted to jump back to your first point on what makes a sentence harsher. Yes. But before we got there, you were explaining what was required in order to give rise to a presumption of vindictiveness. Yes. The way you said it was a little different than I understood it. Could you repeat that? So I think first, the sentence has to be actually harsher. And then second, in most of these cases, the court will ask, does the presumption of vindictiveness apply? So is there a reasonable likelihood that the increase in the sentence is the product of actual vindictiveness? But as to that second point, isn't it enough that there's a harsher sentence imposed and then it's not explained why? In other words, there's a lack of explanation as to the harsher sentence, and there's a harsher sentence. And if there's no explanation, is that enough to give rise to a presumption of vindictiveness? So there are some cases where the Supreme Court and this court has recognized that there's a difference, or there's a different posture, that there are some circumstances where the posture is just such that a presumption of vindictiveness doesn't apply. For example, you pleaded guilty, then you went to trial, or it's a different judge. And I think that I'd like to point the court to an intervening event in this case that I think helps remove the likelihood that this sentence was actually the product of actual vindictiveness. And that is that on remand, the probation officer specifically recommended certain conditions based on the defendant's case. Now, the probation office is the entity that supervises a defendant on supervision. It reviewed his case, and it said, based on what we're seeing with this defendant, we are recommending this particular warrantless search condition. So I think that that is an intervening event, and I appreciate it's not the typical posture cases where there's a category of cases where there's been a trial, or there's a new judge. But I do think that that is something outside of the district court that explains why this is different. And in a lot of these cases where a probation officer makes a recommendation in their area of expertise, a district judge is inclined to defer to that, particularly in a case like this where there's no objection. There's been no concern raised by the defendant about the appropriateness of this particular condition. You know, my original assumption was just that the probation office changed the wording of how it recommended this condition. Like, I could have been wrong in this assumption, but I assume that the probation office proposed how this condition would be articulated, and originally it articulated it the way that it was imposed in the original sentencing, but then they changed the way they did it. They may have been clearer about wanting to search computers and phones and such, and then added the reasonable suspicion requirement. But you're saying that the probation office in this case crafted this condition for this particular defendant? No, I think that this particular language is a typical warrantless search condition. And this is kind of the standard language that the probation office is using in, I believe, 2023 when this case was resentenced. And they determined that warrantless searches were appropriate, and they did that particular condition. Now, I will say that at the original sentencing hearing, in the 2019 PSR, the probation officer did not recommend any particular special supervised release conditions. Between 2019 and 2023, when this case was resentenced, there was a lot of changes in supervised release law, including Rogers and Singletary, and the need to make sure that the defendants had adequate notice of special conditions. And so our probation office has changed its practice, and where it is recommending special conditions, now those appear in either, like here it was the resentencing memorandum, otherwise it will appear in the original PSR. And I will say that, to my knowledge, back in 2019, the previously worded condition did tend to be one of the standard verbiage that probation used, and yes. As a general matter, before we comply with vindictiveness to a district judge, you would want to look at the sentencing proceeding as a whole, and you would want to ask whether there was something that was just arbitrary or ungrounded. The question as a whole is this was a, it's not a vindictive sentence. The district court explained at length why he was given the sentence that he was given, and it makes sense. And the overall sentencing proceeding, the district court was very careful with it. And what he did was he had good reasons for what he did. It was well grounded. This was not a vindictive act. This was an act which involved a very clear-eyed appraisal of someone who had a history of not following the rules and of someone who did everything possible to kill another human being and, in fact, condemned him to an entire lifetime in a wheelchair. And the district court felt that an act and an offense of this magnitude deserved a serious sentence. That is not vindictiveness. That is matching the sentence to the horrific circumstances of the crime. And if there was something arbitrary or wholly disproportionate or whatever that what the district court did, then, yes, you would pull back the curtain and say, look, this will not stand. But here, any individual could understand why this individual, this defendant, received this sentence that he did. And you have to look at it, what the district court did as a whole. What the district court did as a whole, he did what we wanted, which was to explain it and ground it in the facts of the case and the PSR. And there was no objection to it until we got up here. And then all of a sudden, what he did must have been wrong, must have been vindictive. But it was all that vindictive. Why was nothing said about it? And I agree. And I want to point out that after Chang, there is no dispute that this is on a plein air standard of review for vindictiveness. In Chang, at 1050, the court said, upon hearing the sentence, defendant could have readily objective, citing Pierce and giving court the opportunity to address the objection and perhaps avoid this issue on appeal. So this is absolutely on plein air review. Similar to Chang, we don't think that the sentence is actually harsher, nor do we think that it was imposed in circumstances that present a reasonable likelihood that any change is the product of actual vindictiveness. But if the court were to disagree, and, for example, in Chang, the court thought it was at least arguable that maybe the presumption should apply. In Chang, the court refused to reassign the case to a different judge, specifically saying, the judge below conducted thorough and reasonable sentencing hearings, and we have found nothing in the court's comments or conduct. I didn't want to get to this thing about reassigning it to some judge if it wasn't vindictive. That's true. If we don't think that this vindictiveness stuff has some substance, we don't have to worry about it. That's true. I'm simply pointing out that a finding, if the presumption were to arise, it is not a foregone conclusion that it must go to a different judge. And I'd like to turn back very briefly to the explanation for the warrantless search condition, because I wanted to respond to the idea that the defendant's not a drug dealer or that his involvement with drugs had no bearing on this case. To be clear, the defendant has, I think, 10 paragraphs in his PSR of drug-related offenses, and he also admitted to having a substance abuse addiction to both marijuana and alcohol. So the court's concerns about drugs and being able to look for drugs was absolutely well-founded and supported by the record. The offenses that he's convicted for were drug-related offenses. It was also a drug-related offense. It was a Hobbs Act robbery of a drug dealer, the objects of which, too, were— And he got a break when the Supreme Court decided that the Hobbs Act robbery was not a— Yes, it was attempted. It was an attempted Hobbs Act robbery. The reason that he was being resentenced was this Taylor decision of the Supreme Court on whether Hobbs Act robbery was a crime of violence. Is that right? That is correct. And he received the resentencing. Resentencing, right. The sentence went from 216 to 204. Correct. And given the court's thorough explanation at the first sentencing hearing, I would submit to the court that the reasoning for that one-year reduction related to his good performance while he was in custody. But again, that good performance didn't alleviate the court's concerns that this was an individual who had an extended record of violating the rules and that the probation officer needed to have the tools to address him. And it's subject to the discretion of the sentencing court how to weigh mitigating and aggravating circumstances. And the judge took into account the good behavior you just referenced but still found the aggravating circumstances to warrant the sentence to be imposed. Correct? Yes. And one more thing. I wanted to comment upon ARBA, which is a 2020 decision by this court that had an abusive discretion standard of review. And I want to point out that the conditions in that case were vastly different from the sort of condition we're having here. There in ARBA, there were four conditions that had, according to this court, no explanation at all. And that provided for random inspections, including the copying of data of all computer electronic communications and other devices. It authorized the probation officer to temporarily remove those devices for more extensive examination. It prohibited the encryption, and it also required monitoring. So those were very, far more intrusive monitoring. And also, ARBA was a lifetime condition. When we look at these other conditions where the court has addressed the explanation and has been focused on computer-related conditions, they tend to be far more intensive and for the remainder of the defendant's life. That was the case in Ross, ARBA, McMiller. Hendricks was 20 years, which was probably the remainder of that defendant's life. after he served his time of imprisonment. So we're looking at more intrusive terms over a broader period of time. Here, we have a warrantless search condition that happens to extend to computers and electronic devices. In a case where there was a conspiracy between two individuals to rob drug dealers, this is an individual who himself has a lengthy involvement with drugs. And under the circumstances of this case, the court's explanation was reasonable. This was an appropriately tailored condition for this defendant. One of the things we seem to be litigating more over conditions of supervised release than we do often of the underlying sentence of imprisonment. And that is surprising to me in a way that people are attacking the conditions of supervised release. I understand that. But very often, the supervised release gives rise to more litigation than the reasonableness of the underlying term of imprisonment. And I'm wondering, perhaps this is an unfounded concern on my part, but I don't want to get in a situation where all these questions raised above about supervised release lead trial courts to impose more severe sentences in terms of imprisonment so that they won't be tied up in this endless thing about standard conditions and optional conditions and whether it was orally pronounced or whether it was not. But are we in danger here with all this litigation of undermining the utility of supervised release as a component of sentencing? Or is this just an unfounded concern on my part? It could be. I think that in the last five years that I've been practicing, I mean I've been practicing in this district since 2009. And the last five years have absolutely seen a boom in supervised release-related challenges. And I think between Rogers Singletary and some of the other cases, that has presented more avenues for procedural and other challenges. But even being apart from Singletary, there's been an increase, it seems to me recently within the past several years or so, of litigiousness over the supervised release conditions. And I think supervised release is a wonderful way in which to reintegrate individuals into society and give them a second chance. I don't want district judges to shy away from it because of this constant barrage of litigation over conditions and the relationship between the district judge and the probation officer. It's not just Singletary questions. There's a whole bunch of them. I'm just interested in whether this is causing district courts to rethink the utility of this. May I respond briefly? I see I'm over my time. So I think that the courts continue to view supervised release as a way to help ensure that an individual reintegrates into society. And I think that also the way this court has crafted the remedy for failure, if there's a failure to adequately explain a condition, this court has crafted a narrow remedy where only that condition is vacated and it's sent back for the court to consider whether to keep that condition, modify the condition, and to provide whatever explanation was lacking. For example, in Locklear, when this case went back, there was information presented to the district court regarding the defendant's possession of a cellular telephone. And in that case, the district court imposed the same supervised release condition explaining that it was appropriate based on the conduct involving a cellular telephone and his poor performance on supervised release. So I do think that courts continue to view supervised release as a tool. I haven't seen any indication that judges are modifying their views of an appropriate term of imprisonment based on the procedural requirements for supervised release, and I think that the court's limitation of the remedy helps ensure that the district judges continue to... We're just remanding on the sole condition. Remanding just on the sole condition ensures that this court receives the explanation that it deemed to be lacking, and supervised release continues to be an effective tool. Ultimately... Hold on a minute, we're giving you some extra time here because we can't give you any further questions. We don't have any further questions. All right, thank you. The defendant received a more favorable sentence on remand, and we ask that you affirm it. All right, we have some rebuttals out here. We'd be happy to hear from you. Just briefly, Judge Wilkinson, I do need to correct my friend about the resentencing in Locklear. The district court actually did not impose the same warrantless search condition. He got rid of the search of computers, and I actually didn't really hear her distinguish the Locklear case, and I just really encourage this panel to look at the facts in the sentencing transcript in Locklear. Look at the explanation. It is virtually identical to this case in terms of the explanation and the condition imposed. What do we do with the three decades of refusing to follow the rules, and it seems like there's a pattern over and over of an individual who just openly flouted the rules over a very long period of time. Previous regimes of supervised release had failed to do their job, and the district judge at the end said, I don't want a repeat of all that. I don't think that's what the district court said. I don't believe that the district court ever... That's what he must have thought. And we can't read the district court's mind, Your Honor. And so, like I said, when the exact same condition was sent back to the district court in Locklear, the district court actually gave it some thought and said, actually, we don't need that computer condition after all. And again, I would also like to point out, and Locklear is unpublished, that's true, but it was orally argued, and it relied on Arbaugh. And in Arbaugh, there was a... My friend pointed out that there were a number of other conditions, and that's true, of searching the computer and the phone, but there was a warrantless search condition for that sex offender that this court nonetheless said what had not been properly explained did not see the need for that particular warrantless search condition, and I think the same is true here. All these matters are individualized, and all these sentences are supposed to be individualized, and the question you ask is, does the sentence fit the crime? And here, well, we don't need to go over this again. We're in agreement on the fact that this offense was a serious one. You raised a lot of other issues. And I'm happy to just stand on my briefs on those issues. Judge Wilkinson, I understand we have very limited time today, so I will stand on my brief. Do you have a question about the harshness? Absolutely. What do you make of the requirement of reasonable suspicion being added to the search condition? How do we factor that into the determination of whether this sentence was actually harsher or not? So there's reasonable suspicion required for, of course, a law enforcement search, right, but not for the probation officer. So the probation officer can still do... The final part of that condition is the probation officer can still search the defendant. So I would agree that that is maybe one of benefit to the defendant, but I think it's vastly outweighed by all the other onerous conditions as a part of that search condition. And I did want to point out, Judge Maddox... I don't read it that way. It says, unless I'm misquoting it, it says, search at any time with or without a warrant, and then it gives the various locations, upon reasonable suspicion concerning a violation of the conditions of supervised release or unlawful conduct by the defendant or by any probation officer. And I guess the grammatical structure of that suggests that even the probation officer needs reasonable suspicion. Am I misreading it? That is not how we would read it. We would read it the probation officer does not have to have reasonable suspicion. But I did want to also point out, Your Honor, because you were asking about this sort of increased harshness in Chang, I would just simply point out that this issue, the one that I am raising as to how do we determine an increase in the sentence, was never raised or briefed in Chang. It simply wasn't. The government did not dispute it. And so the first time that issue was ever brought up was at oral argument when Judge Niemeyer asked a question about it. So I think there was, in Chang, they simply accepted the government's concession that the sentence was harsher, even though the term of imprisonment went down. So I just wanted to point that out. We would ask for you to at least vacate the warrantless search condition and send this back to the District Court, Judge. Thank you, Your Honors. Thank you. Do you have any further? No, I do not. Okay. All right, we thank you very much. We will come down and recounsel and move directly into our next case.
judges: J. Harvie Wilkinson III, Robert B. King, Matthew James Maddox